# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Jeri Fjelstad, *et al.*,

               Plaintiffs,

v.

State Farm Insurance Company,

               Defendant.

Civ. No. 11-1795 (RHK/LIB)

**MEMORANDUM OPINION
AND ORDER**

Donald L. Beauclaire, Robert J. Hajek, Hajek & Beauclaire LLC, Minnetonka, Minnesota, for Plaintiffs.

Nicholas J. O'Connell, C. Todd Koebele, Murnane Brandt, PA, St. Paul, Minnesota, for Defendant.

## INTRODUCTION

    This action arises out of an automobile accident on January 8, 2011, in which Plaintiff Jeri Fjelstad and her two sisters, Plaintiffs Caroline Gerving and Linda Emerson, were struck by a car driven by Charles Hanson in a Wal-Mart parking lot in Detroit Lakes, Minnesota. Because Hanson's liability-insurance coverage was insufficient to compensate for all of their injuries, Plaintiffs commenced this action against *Fjelstad's* insurer, Defendant State Farm Insurance Company ("State Farm"), seeking underinsured-motorist and no-fault benefits under her policy. Presently before the Court are the parties' cross-Motions for Summary Judgment as to coverage, on which three of the four claims in the Complaint turn. For the reasons that follow, Plaintiffs' Motion will be denied and State Farm's Motion granted.

## BACKGROUND

The relevant facts are undisputed.  On the date in question, Plaintiffs, along with Fjelstad's husband Tim, ran errands together in Fjelstad's car, which was insured by State Farm.  The four stopped to buy loaves of bread, then traveled to another store and made additional purchases.  Fjelstad placed all of the purchases – including Gerving's and Emerson's – into the trunk of her car.  After stopping for lunch, the four traveled to Wal-Mart in Detroit Lakes.  There, they parked in a handicapped space in the aisle closest to the front door, as Emerson walks with a cane and uses oxygen (which she carries with her).[1]  After shopping for approximately 90 minutes, the four left the store together, with each Plaintiff pushing a shopping cart full of groceries toward Fjelstad's car.

Upon arriving at the car, Fjelstad opened the trunk; she was standing immediately adjacent to the vehicle, with Gerving and Emerson a few feet to her side, shopping carts in hand.  In other words, Fjelstad was between her car and Gerving and Emerson.  Fjelstad then began organizing the items in her trunk before loading the groceries from all three women's shopping carts.  She loaded her purchases into the trunk first, as she would be the last one to exit her car after the errands were complete.  As Fjelstad was in the process of placing items into the trunk, a vehicle driven by Hanson entered the aisle and drove into and directly through all three Plaintiffs.[2]  Fjelstad was thrown into the vehicle parked next to her car; Gerving was forcefully knocked to the ground; and

---

[1] Due to the car's proximity to the store's entrance, a surveillance camera captured the accident.

[2] The parties dispute whether Fjelstad had loaded any of Gerving's or Emerson's groceries into her trunk before the accident.  It is undisputed, however, that Fjelstad was still in the process of loading the trunk when the accident occurred.

Emerson was dragged under Hanson's vehicle for some distance before finally being "run over" and falling free. The cause of the accident is undisclosed.

Following the accident, Plaintiffs commenced a negligence action against Hanson, and his automobile insurer agreed to pay the limits of coverage under his policy. However, Plaintiffs claimed this was an insufficient amount to compensate them for all of their injuries, and they sought underinsured-motorist benefits from State Farm via Fjelstad's policy. That policy provides, in pertinent part, that State Farm "will pay compensatory damages for bodily injury an *insured* is legally entitled to recover from the owner or driver of an underinsured motor vehicle," as long as the bodily injury is "sustained by an *insured*." As relevant here, the policy defines the term "insured" to include all persons "occupying" the policyholder's car, with the term "occupying" defined as "in, on, entering, or exiting."

After State Farm denied benefits to Gerving and Emerson, Plaintiffs commenced the instant action in the Hennepin County, Minnesota, District Court, and State Farm promptly removed it to this Court. The Complaint contains four counts. In Count I, Gerving and Emerson seek a declaration that they were insureds under Fjelstad's policy. In Count II, Plaintiffs assert that they are (jointly) entitled to the full amount of underinsured-motorist benefits available under the policy ($500,000), due to the nature and extent of their injuries. In Counts III and IV, respectively, Emerson and Gerving assert that they are entitled to no-fault medical benefits and no-fault wage loss benefits under Fjelstad's policy.

With discovery complete, the parties have cross-moved for summary judgment on
Counts I, III, and IV in the Complaint, which are the claims brought by Gerving and
Emerson alone (not Fjelstad).  All parties agree these claims hinge on whether Gerving
and Emerson were "insureds" under the policy, a question that turns on whether they
were "occupying" Fjelstad's vehicle at the time of the accident.  The Court held a hearing
on the cross-Motions on February 21, 2012, which are now ripe for disposition.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the
nonmoving party, there is no genuine issue as to any material fact and the moving party is
entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett,
477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the
material facts in the case are undisputed.  Id. at 322; Whisenhunt v. Sw. Bell Tel., 573
F.3d 565, 568 (8th Cir. 2009).  The Court must view the evidence, and the inferences that
may be reasonably drawn from it, in the light most favorable to the nonmoving party.
Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v.
Target Corp., 503 F.3d 714, 716 (8th Cir. 2007).  The nonmoving party may not rest on
mere allegations or denials, but must show through the presentation of admissible
evidence that specific facts exist creating a genuine issue for trial.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528
F.3d 1074, 1078-79 (8th Cir. 2008).

Where, as here, the Court confronts cross-motions for summary judgment, this
approach is only slightly modified.  When considering Plaintiffs' Motion, the Court

views the record in the light most favorable to State Farm, and when considering State

Farm's Motion, the Court views the record in the light most favorable to Plaintiffs.

"Either way, summary judgment is proper if the record demonstrates that there is no

genuine issue as to any material fact." Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL

3613821, at *3 (D. Minn. Sept. 7, 2010) (Kyle, J.), aff'd, No. 10-3532, 2011 WL 873121

(8th Cir. Mar. 15, 2011).

## ANALYSIS

State law governs the interpretation of insurance policies. E.g., Nat'l Union Fire

Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003).  Under

Minnesota law,[3] interpretation of an insurance policy is a question of law for the Court.

Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 688 (Minn. 1997).  When policy

language is unambiguous, it is interpreted "in accordance with its plain and ordinary

meaning."  Ill. Farmers Ins. Co. v. Glass Serv. Co., 683 N.W.2d 792, 799 (Minn. 2004).

As discussed above, all parties agree the dispositive issue is whether Gerving and

Emerson were "insureds" under Fjelstad's State Farm policy.  The policy defines the term

"insured" in several ways, only one of which is relevant here:  any person "occupying"

the policyholder's (Fjelstad's) car.  In turn, the policy defines the term "occupying" to

mean "in, on, entering, or exiting."  No party argues that these definitions are ambiguous,

and the Court agrees.  Moreover, all parties agree the material facts are undisputed.

Hence, the only remaining question is whether, as a matter of law, the evidence shows

---

[3] No party suggests that any other state's law applies here.  See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003) (law of forum state applies by default where parties do not raise choice-of-law issue).

that Gerving and Emerson were "in, on, entering, or exiting" Fjelstad's car when the

accident occurred.  In the Court's view, the answer is, "No."[4]

The issue confronting the Court is not unique.  Scores of cases across the country

have addressed whether persons were "occupying" insured vehicles in a variety of factual

settings.  Not surprisingly, they have reached somewhat inconsistent conclusions.  See,

e.g., Robert Roy, Annotation, What Constitutes "Entering" or "Alighting From" Vehicle

Within Meaning of Insurance Policy, or Statute Mandating Insurance Coverage, 59

A.L.R.4th 149 (1988); Jonathan M. Purver, Annotation, Automobile Insurance:  When is

a Person "Occupying" an Automobile Within Meaning of Medical Payments Provision,

42 A.L.R.3d 501 (1972).  As one court has put it, the term "[o]ccupying . . . has been the

subject of repeated litigation in the area of uninsured motorist and medical payment

coverage," and "determining whether a person is 'occupying' a vehicle is not as easy as it

might appear at first blush."  Robson v. Lightning Rod Mut. Ins. Co., 393 N.E.2d 1053,

1054 (Ohio Ct. App. 1978).  This is no less true in Minnesota, where courts repeatedly

have grappled with the term "occupying" under a wide array of facts.  The parties cite

three such Minnesota cases to the Court, which they contend dictate the outcome here.

Because they are critical to the Court's analysis, these cases are discussed in some detail

below.

---

[4] Although somewhat unclear from their briefs, Gerving and Emerson do not appear to argue
they were "in," "on," or "exiting" Fjelstad's vehicle when they were injured.  Rather, their
argument seems to be that they were "entering" the vehicle at that time.  (See Pl. Mem. in Opp'n
at 10.)  The Court agrees that this is the only potentially applicable definition of the term
"occupying" under the facts here.

State Farm directs the Court's attention to <u>Allied Mutual Insurance Co. v. Western National Mutual Insurance Co.</u>, 552 N.W.2d 561 (Minn. 1996), and <u>Short v. Midwest Family Mutual Insurance Co.</u>, 602 N.W.2d 914 (Minn. Ct. App. 1999).  In <u>Allied</u>, Malcolm McMillan and two friends traveled in McMillan's car to a bar in St. Cloud. When they later left the bar, they found themselves locked out of the car because McMillan had broken the key in the lock earlier that day.  As McMillan attempted to gain entry to the car, and while his two friends "watched from a nearby vantage point," all three were struck by an uninsured vehicle.  552 N.W.2d at 562.  One of the friends (Decker) sought uninsured-motorist benefits from McMillan's insurer, the availability of which turned on whether she was "occupying" his car at the time of the accident.  The trial court and the Minnesota Court of Appeals held that Decker was, in fact, occupying McMillan's car, based primarily on earlier Court of Appeals cases "defining 'occupying' in the terms of a 'reasonable geographic perimeter around a vehicle or a continuing relationship between a vehicle and the claimant.'"  <u>Id.</u> at 563 (citation omitted).

The Minnesota Supreme Court reversed.  It determined that the term "occupy," which the policy defined as "in, upon, getting in, on, out or off," was unambiguous and could not be extended to anyone within a "reasonable geographic perimeter around an automobile."  <u>Id.</u> ("[A]pplication of such a measure to determine occupancy calls to mind the equity that depended on the length of the chancellor's foot.").  Because Decker was "standing in the vicinity of the McMillan automobile [by] mere happenstance," and because she "had no immediate expectation of occupying the car, which McMillan could

not unlock," the high court held that she was "not occupying – *i.e.,* in or getting in – McMillan's automobile."  Id.

Short is similar.  There, the plaintiff, a tow truck driver, had "just locked [a stalled] car onto a lift device and was walking toward the lift controls at the rear of the tow truck when a pickup truck collided with the car and pushed it into [him]."  602 N.W.2d at 915.  He sought underinsured-motorist benefits under his employer's insurance policy, which could be recovered only if he was "occupying" – that is, "in, upon, getting in, on, out or off" – the tow truck.  Id.  Despite the fact that the plaintiff was walking back to the truck and was very close to it at the time he was injured, the Minnesota Court of Appeals affirmed the trial court's determination that the plaintiff was not "occupying" the truck.  In so holding, it rejected its earlier decision in Conlin v. City of Eagan, 482 N.W.2d 519 (Minn. Ct. App. 1992), a similar case involving a tow truck driver, because of the Minnesota Supreme Court's intervening decision in Allied.  Id. at 916.

Gerving and Emerson counter with Illinois Farmers Insurance Co. v. Marvin, 707 N.W.2d 747 (Minn. Ct. App. 2006).  There, Marvin traveled with her friend, Weigel, to the home of Weigel's father (Betz), where they intended to load toys into the back of Weigel's Ford Explorer.  Id. at 749.  They began placing large toys in the Explorer's rear cargo area, and "[a]t one point, [Marvin] leaned into the cargo area . . . and pushed toys back to make room for one more toy."  Id.  "As she slid off of the cargo floor onto the ground," Betz backed his vehicle into the Explorer, "crushing [Marvin's] legs between the bumpers of the two automobiles."  Id.  Marvin sought underinsured-motorist benefits

from Weigel's insurer, which contended that she was not occupying – "in, on, [or] getting into our out of" – the Explorer at the time of the accident.  Noting that Marvin "was in the process of loading the vehicle" when she was injured and that it was undisputed "the upper half of her body had been in the vehicle mere moments before the accident," the Minnesota Court of Appeals affirmed the trial court's determination that Marvin was, in fact, "occupying" the vehicle at that time.  Id. at 751.[5]

These three cases do not differ significantly, but in two (Allied and Short) the victim was deemed *not* to have occupied the vehicle in question, while in the third (Marvin) – the most recent case – the victim *was* deemed an occupant.  As the parties acknowledged at oral argument, the facts here fall somewhere in between.  Similar to the plaintiff in Marvin, Gerving and Emerson were participating in the process of loading a vehicle when they were injured.  They anticipated entering the vehicle at some point after loading was complete, much like the plaintiff in Short anticipated entering the tow truck after the disabled car was secured.  Moreover, Gerving and Emerson had a far *greater* expectation of entering the vehicle than did the victim in Allied, who was locked out of the insured car without any means of gaining entry.

Nevertheless, this Court believes that the instant case is closer to the facts in Allied and Short than those in Marvin.  The critical distinction lies in the fact that the

---

[5] In their Reply brief and at oral argument, Gerving and Emerson also directed the Court's attention to Hines v. St. Paul Insurance Co., No. C2-95-2322, 1997 WL 3390 (Minn. Ct. App. Jan. 7, 1997), and a case concluding its outcome was dictated by Hines, King v. Westfield Insurance Co., 393 F. Supp. 2d 910 (D. Minn. July 18, 2005) (Tunheim, J.).  Those cases held that the plaintiffs were occupying the vehicles in question for purposes of insurance coverage.  Yet, Hines was reversed on appeal by the Minnesota Supreme Court.  Accordingly, the Court declines to consider it (or King).

Marvin plaintiff was injured as she "was in the process of sliding off the cargo floor onto the ground."  707 N.W.2d at 751.  Such conduct clearly would constitute "getting out of" the vehicle and, hence, fall within the policy's definition of the term "occupying."  No similar conduct is involved here.  At no point immediately prior to the accident was any part of either Gerving's or Emerson's body in Fjelstad's vehicle.  There is no dispute that they never loaded any items into the trunk; indeed, it is acknowledged they stood by for several minutes while *Fjelstad* completed the loading process.  Nor did either anticipate entering the car immediately after loading was complete.  Rather, each testified at her deposition that after all items had been removed from her cart and placed into the trunk, she would have walked the cart down the aisle to a cart corral, returned it, and then walked back to the car to leave.[6]

Gerving and Emerson seize on the fact that the plaintiff in Marvin was "in the process of loading the vehicle" when she was injured.  They argue that they were also in "the process" of loading Fjelstad's car, even though they were not physically placing items into the trunk, because the loading process was a "group effort."  In other words,

_____

[6] Fjelstad avers that "[a]fter all of our groceries were loaded into the trunk, it was our intent to *immediately* enter the vehicle and drive back to our respective homes."  (Fjelstad Aff. ¶ 4 (emphasis added).)  But while she may proffer via Affidavit what *she* intended to do after completing the loading process, she cannot explain what *Gerving* or *Emerson* intended to do without providing some evidentiary basis for her belief.  See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge.").  Furthermore, Gerving and Emerson each testified in her deposition that she intended to walk the shopping cart down the aisle and place it in the cart corral before returning to the car to leave; in other words, Fjelstad's Affidavit is directly contradicted by their testimony.  (See Gerving Dep. at 24; Emerson Dep. at 24.)  And notably, the surveillance video indicates that the shopping carts needed to be moved before Fjelstad's car could leave the parking lot; the carts were immediately behind the car, preventing it from backing up, and a large sign blocked the car's path in the front.  Fjelstad's Affidavit, therefore, is insufficient to create a genuine issue of material fact.

they argue that because *Fjelstad* was entering and exiting the trunk to load their purchases, they, too, were entering and exiting the trunk, as if Fjelstad's actions vicariously applied to them.  (<u>See</u> Pl. Mem. in Opp'n at 12 ("It is Plaintiffs' position that under these facts, Plaintiffs as a group were occupying the vehicle.").)

But a similar argument was rejected in <u>Himle v. American Family Mutual Insurance Co.</u>, 445 N.W.2d 587 (Minn. Ct. App. 1989), which is the most analogous case the Court has been able to locate.[7]  There, the plaintiff (Himle) and a friend (Sumption) were attempting to load a horse into a trailer attached to the back of Himle's car. Sumption entered the trailer and tied a rope to a ring inside; the other end of the rope was attached to the horse's halter.  <u>Id.</u> at 588.  Sumption exited the trailer, and together with Himle "linked arms around the horse's hindquarters and attempted to push the horse into the trailer," to no avail.  <u>Id.</u>  The horse bucked, pinning Sumption to the trailer's side, and when Himle approached to assist, the horse bolted, knocking Himle to the ground and crushing his legs.  <u>Id.</u>

Himle sought benefits from his automobile insurer; the issue was whether he was "occupying" the vehicle when he was injured.  <u>Id.</u> at 589.  The district court answered that question in the affirmative, but the Minnesota Court of Appeals disagreed, even though (1) he was working together with Sumption to load the trailer, (2) Sumption had entered the trailer while securing the horse, and (3) the two jointly pushed the horse in an effort to load it into the trailer:

---

[7] No party has referenced <u>Himle</u>.

> [A] person injured in the course of loading or unloading a motor vehicle is
> not entitled to . . . benefits unless the injury occurs while the person is
> occupying, entering or alighting from a motor vehicle. [Himle] concedes
> he never entered the horse trailer. Although Sumption did enter the trailer
> to string up the lead rope, he alighted from the trailer before the two men
> began pulling and pushing the horse into the trailer. Thus, the accident did
> not occur *while* either [Himle] or Sumption w[as] "occupying" the trailer.

Id. at 591 (emphasis in original). Here, as in Himle, neither Gerving nor Emerson entered Fjelstad's car while it was being loaded, and although *Fjelstad* entered the trunk, she was not inside it when the accident occurred. That Gerving and Emerson were present while their purchases were being loaded into Fjelstad's car simply does not carry the day. See also Krupenny v. W. Bend Mut. Ins. Co., 310 N.W.2d 133, 135 (Minn. 1981) (garbage-truck driver injured while loading garbage into insured truck was not "occupying" truck).

Plaintiffs also note that Marvin found it important the victim "state[d] that it was her intent to take her seat in the passenger side and leave the area" after the vehicle was fully loaded. (Pl. Mem. in Supp. at 9.) But keying in too greatly on the injured party's intent would send courts down a dangerously slippery slope. Indeed, doing so might mean, for example, that a person walking toward her vehicle was "occupying" it simply because she intended to enter upon reaching it. But see Short, 602 N.W.2d at 915. Accepting that premise would stretch the term "occupying" beyond its commonly understood meaning. The Court declines the invitation to do so. See Allied, 552 N.W.2d at 563-64 (court must be careful not to use "creative definition[s]" for term "occupying" or "mold[] [it]" to fit whatever conclusion is convenient").

To be sure, <u>Allied</u>, <u>Short</u>, and <u>Marvin</u> are not easily reconciled and have left the law in Minnesota somewhat unclear.  In such a situation, this Court's "task is to predict how the state supreme court would resolve the issue if faced with it."  <u>Marvin Lumber &</u> <u>Cedar Co. v. PPG Indus., Inc.</u>, 223 F.3d 873, 876 (8th Cir. 2000).  The victim in <u>Allied</u> was in the vicinity of the car and waiting to enter it when she was injured, and the victim in <u>Himle</u> was assisting another person in loading a vehicle when injured, and yet neither was held to be "occupying" – getting in – the vehicle in question.  <u>Allied</u>, 552 N.W.2d at 563; <u>Himle</u>, 445 N.W.2d at 591.  In the Court's view, these cases indicate that, if confronted with the instant facts, the Minnesota Supreme Court would conclude Gerving and Emerson were not "occupying" Fjelstad's vehicle, as they were not physically placing themselves within the car's confines.  <u>See</u> American Heritage Dictionary 456 (2d ed. 1985) (defining "enter" as "[t]o come or go into" or "[t]o penetrate; pierce").  The facts show that they were simply standing outside the car, waiting to enter, while Fjelstad placed their purchases in the trunk.  Because they were not "entering" the car when they were struck, they were not "occupying" it and, hence, they were not insureds under the policy.[8]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. No. 14) is **DENIED**,

---

[8] For these reasons, the Court rejects the suggestion – raised for the first time at oral argument – that <u>Allied</u> is distinguishable because the policy at issue there used the (supposedly narrower) term "getting in" rather than the (supposedly broader) term "entering," as in Fjelstad's policy.  In this Court's view, "entering" and "getting in" are synonymous.

State Farm's Motion for Summary Judgment (Doc. No. 20) is **GRANTED**, and Counts I,

III, and IV of the Complaint (attached to Doc. No. 1) are **DISMISSED WITH**

**PREJUDICE**.


Dated: February 27, 2012                          s/Richard H. Kyle
                                                  RICHARD H. KYLE
                                                  United States District Judge